# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ATM COUNCIL, INC. *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> VISA INC. *et al.*, ) <br> ) <br> Defendants ) | Civil Case No. 11-1803 (RJL) |

## 1st MEMORANDUM OPINION
(May 2⁄, 2017) [Dkts. ## 60, 87, 102]

FILED
MAY 22 2017
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Automatic teller machines ("ATMs") all around the country allow individuals to conveniently withdraw cash from their bank accounts without having to locate an open bank branch to consummate their transaction. Although customers will often use ATMs that are owned and operated by their own banks, they will sometimes pay an "access fee" to use an ATM that is not affiliated with their bank, conducting what is referred to as a "foreign" ATM transaction. Whenever a foreign ATM transaction occurs, the ATM terminal must communicate with the customer's bank through an ATM network. The plaintiffs in this putative class action are a group of independent, non-bank-affiliated ATM operators, and defendants Visa and MasterCard operate several of the ATM networks that plaintiffs utilize during foreign ATM transactions. Plaintiffs allege that Visa and MasterCard have imposed contractual provisions—the "ATM Access Fee Rules"—that prevent them from charging a discounted access fee if a customer's transaction can be processed over an alternative network that is less expensive than Visa or MasterCard

networks, and they allege that those rules unreasonably restrain trade and therefore violate Section 1 of the Sherman Act, 15 U.S.C. § 1.

Currently pending before the Court is plaintiffs' Renewed Application for a Preliminary Injunction [Dkt. # 87], which asks the Court to enjoin defendants' enforcement of the ATM Access Fee Rules during the pendency of this litigation. Upon consideration of the pleadings, the record, and the law, I find that plaintiffs have not met their burden of showing likely irreparable harm in the absence of an injunction, and I therefore DENY the Motion.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs in this case are the National ATM Council, an association of independent ATM operators suing on behalf of its members, and thirteen independent ATM owners and operators. Second Am. Compl., ¶¶ 10–25 [Dkt. # 55]. When an individual uses an independent ATM (or an ATM operated by a bank other than his own), the transaction is referred to as a "foreign transaction."[2] Defs.' Mem. in Opp'n. to Renewed App. for Prelim. Inj. at 4 [Dkt. # 99]. For the purposes of this case, there are four relevant actors in a foreign transaction: (1) the individual accountholder who initiates a transaction by inserting his or

---

[1] Also pending before the Court are defendants' Motion to Strike Independent ATM Operator Plaintiffs' Supplemental Declaration [Dkt. #102], as well as plaintiffs' earlier Application for a Preliminary Injunction [Dkt. # 60], which was superseded by the renewed application and is therefore moot.

[2] As mentioned above, many banks own and operate their own ATMs. When an individual uses an ATM that is owned and operated by their own bank, the transaction is referred to within the banking industry as an "on-us" transaction. Decl. of Jeff Sachs, ¶ 8 [Dkt. # 99-1]. The only parties involved in the transaction are the individual customer and the bank. The transaction does not require an ATM network, and the bank does not normally charge the customer an access fee for using an ATM. Defs.' Mem. in Opp. to Renewed App. for Prelim. Inj. at 4 [Dkt. # 99-1]. Those transactions are not at issue in this case.

her bank-issued ATM card into an ATM; (2) the bank that issued the accountholder's ATM card and maintains his or her accounts; (3) the ATM operator; and (4) the ATM network that connects the "foreign" ATM to the bank. *Id.* at 4–5.

Visa and MasterCard operate the "Plus" and "MasterCard" ATM networks respectively, but there are a number of networks that also facilitate foreign ATM transactions. Decl. of Jeff Sachs, ¶ 7 [Dkt. # 99-1]; Decl. of Leland Englebardt, ¶¶ 4, 7 [Dkt. # 99-2]. In any given transaction, the specific network that is utilized is a function of the networks that the ATM can access, the networks with which the customer's bank-issued ATM card will work, and the preferences that are established by the card-issuing bank. At a minimum, the ATM card and the ATM must share at least one common network for the transaction to work. *See* Defs.' Mem. in Opp'n at 5 [Dkt. # 99].

As independent ATM operators, plaintiffs can earn revenue in two ways. First, as mentioned before, they can charge customers an "access fee" for using their terminal. Sachs Decl. ¶ 10; Englebardt Decl. ¶ 11. Second, they indirectly receive "net interchange" fees. *Id.* The card-issuing banks pay an "interchange fee" to ATM networks like Visa and MasterCard, and through a complex system of payments, a portion of the fee eventually gets passed to the end ATM operator. Sachs Decl. ¶¶ 10–12; Englebardt Decl. ¶¶ 11–14. The intricacies of interchange payments do not need to be completely fleshed out here, but plaintiffs assert that Visa and MasterCard pay relatively smaller net interchange rates to ATM operators than alternative networks. *See* Restated Decl. of John Michael Powell, ¶¶ 3–5 [Dkt. # 92].

As a contractual condition for accessing their networks, Visa and MasterCard

impose non-discrimination provisions referred to as the "ATM Access Fee Rules." The ATM Access Fee Rules were adopted in 1996, but have remained substantially the same since that time. *Id.* ¶ 2; Sachs Decl. ¶ 23; Englebardt Decl. ¶ 26. Stated simply, the rules prohibit ATM operators from charging access fees for transactions processed over Visa or MasterCard networks that are higher than any access fee they charge for transactions processed over alternative networks. Powell Decl. ¶ 2; Sachs Decl. ¶ 16; Englebardt Decl. ¶ 21. Plaintiffs allege that without the Access Fee Rules, they would offer discounts and structure their access fees to encourage customers to use ATM cards that are compatible with less expensive networks. Second Am. Compl. ¶ 69. As a result, they argue that they are an illegal restraint of trade that unfairly protects Visa and MasterCard from price competition from less expensive networks and harms the operators' profitability and economic sustainability.

Plaintiffs filed this civil class action in October 2011. Compl. [Dkt. #1]. In February 2013, one of my colleagues on the District Court concluded that plaintiffs' complaint failed to allege facts to establish standing or concerted activity under the Sherman Act and dismissed the case without prejudice.[3] *Nat'l ATM Council, Inc. v. Visa Inc.*, 922 F. Supp. 2d 73 (D.D.C. 2013). In December 2013, my colleague denied plaintiffs' motion to alter the judgment with leave to re-plead, after concluding that the proposed

---

[3] This case is related to two putative class actions raising substantially similar claims on behalf of individual consumers who have paid ATM access fees. Second Am. Compl., *Stoumbos v. Visa Inc.*, Case No. 11-cv-1882-RJL (D.D.C. Nov. 23, 2015) [Dkt. # 44]; Second Am. Compl., *Bartron v. Visa Inc.*, Case No. 11-cv-1831-RJL (D.D.C. Nov. 23, 2015) [Dkt. # 84]. Although the plaintiffs in both cases intervened in this matter for purposes of addressing discovery and other matters related to the Motion, they have not taken a position as to whether the Court should grant or deny the Motion. *See* Consumer Pl.-Intervenors' Resp. to the Nat'l ATM Council, Inc.'s App. For Preliminary Injunction at 1 [Dkt. # 66].

amended complaint lacked adequate facts to establish standing or concerted activity. *Nat'l ATM Council, Inc. v. Visa Inc.*, 7 F. Supp. 3d 51 (D.D.C. 2013). Plaintiffs successfully appealed, and our Circuit Court reversed and remanded for further proceedings. *Osborn v. Visa Inc.*, 797 F.3d 1057 (D.C. Cir. 2015). The case was reassigned to me on August 4, 2015. [Dkt # 49].

Plaintiffs originally moved for a preliminary injunction enjoining enforcement of the ATM Access Fee Rules in 2016, but I stayed consideration of the case when the United States Supreme Court granted certiorari to review the Circuit Court's decision. Plaintiffs' Application for a Preliminary Injunction [Dkt. # 60]; 7/21/16 Minute Order Staying Case. In November 2016, the Supreme Court dismissed defendants' petitions for certiorari as improvidently granted. I thereafter held a status conference at which plaintiffs indicated that they were still seeking preliminary relief. At the status conference, I gave the plaintiffs an opportunity to renew their motion and re-constitute their briefs to account for any changed circumstances arising from the passage of time. Plaintiffs' Renewed Application for a Preliminary Injunction [Dkt. # 87]. After the renewed motion was fully briefed, I held a hearing on April 18, 2017 and took the motion under advisement.

In their renewed motion, plaintiffs seek a broad injunction that would prohibit Visa and MasterCard from adopting or enforcing any rules that would stop ATM operators from charging higher access fees for transactions over Visa and MasterCard networks; offering customers discounts, incentives, or free services for using specific ATM cards or networks; expressing a preference for or promoting specific networks; communicating the relative costs incurred when different networks are used; or engaging in substantially equivalent

5

practices. Corrected Renewed Application for a Preliminary Injunction at 4 [Dkt. #97].

## STANDARD OF REVIEW

A party seeking a preliminary injunction must make a "clear showing" that the following four factors, taken together, merit the granting of such an extraordinary remedy: that there is "likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and [the requested injunction is in] accord with the public interest." *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004); *League of Women Voters of United States v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (quoting *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 505 (D.C. Cir. 2016)).

Courts considering these factors tend to apply a "sliding scale" that balances the relative strength of the arguments for each factor. *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009). However, a movant "must demonstrate at least some injury for a preliminary injunction to issue," and a "movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). *See also Econ. Research Servs., Inc. v. Resolution Econ., LLC,* 140 F. Supp. 3d 47, 52 (D.D.C. 2015). Because plaintiffs have not demonstrated irreparable harm, the Court's inquiry begins, and ends, with this factor.

## ANALYSIS

In order to establish the likelihood of irreparable harm, a movant must show that the complained-of injury is "certain and great" as well as "actual and not theoretical," and is of "such imminence that there is a 'clear and present' need for equitable relief to prevent

irreparable harm." *Wisconsin Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1985). Additionally, our Circuit has made clear that "[e]conomic harm does not, in and of itself, constitute irreparable harm." *Id.* at 674. It is insufficient for a party seeking a preliminary injunction to point to injuries that can be quantified "in terms of money, time and energy necessarily expended in the absence of [an injunction]," because "the possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm." *Id.* (quoting *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958).

Here, the plaintiffs argue that the ATM Access Fee Rules restrict their ability to exercise discretion when setting ATM access fees and subject them to "continuing financial and reputational harm during the pendency of this litigation." Renewed App. at 8 [Dkt. # 97]. This is a recoverable monetary harm, and plaintiffs even concede that the asserted "losses could be remediable by money damages for . . . individual firm[s]." *Id.* Nevertheless, plaintiffs argue that the harm is still irreparable because the ATM Access Fee Rules "harm the entire market" and therefore pose an "existential" threat to the independent ATM industry. *Id.* at 2, 9. I disagree.

Plaintiffs appear to be invoking the exception to the general rule that losses can establish irreparable harm when the "the loss threatens the very existence of the movant's business." *Wisconsin Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1985) (citing *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 n. 2 (D.C.Cir.1977)); *see also Arriva Med. LLC v. U.S. Dep't of Health & Human Servs.*, No. CV 16-2521-JEB, 2017 WL 943904, at *8 (D.D.C. Mar. 9, 2017). However, plaintiffs fail

to provide evidence showing that the plaintiffs (or other independent ATM operators) have been or are likely to be driven out of business as a result of the ATM Access Fee Rules.

Rather than showing that specific plaintiffs have been shut down, or will have to shut down imminently as a result of the ATM Access Fee Rules, plaintiffs instead point to an "observable decline in the number of [independent operators] that deploy ATMs" in recent years. Reply Brief at 2 [Dkt. # 100]. To support this contention, they provide affidavits from industry actors stating that the number of independent operators and ATM terminals has declined in recent years. *See, e.g.*, Restated Decl. of Roger Myers, ¶ 18 [Dkt. # 91] ("In the past five years I have observed a decline in the number of [independent operators] that deploy ATMS."); Restated Decl. of John Michael Powell, ¶ 1 [Dkt. # 92] ("In the past four years, we have lost approximately 365 terminals."); Bart Carter Decl., ¶ 2 [Dkt. # 89] ("We have experienced significant decline in the number of terminals deployed and a severe squeeze on our ability to generate a profit.")

As an initial matter, I am skeptical, to say the least, that a general decline in the number of independent ATMs and operators constitutes an imminent and "existential threat to the movant[s'] business[es]." However, plaintiffs' argument fails for an even more fundamental reason. Plaintiffs do not marshal *any* evidence showing that the ATM Access Fee Rules, which were adopted in 1996 and have remained substantially the same ever since, are the cause of the recent decline they describe. Instead, plaintiffs' affidavits contain nothing more than conclusory and speculative statements about the cause of the decline. *See* Myers Decl. ¶ 18 [Dkt. # 91] ("I believe that one of the principal reasons [for the decline in the number of independent operators who deploy ATMs] is the ATM

Rules."); Powell Decl. ¶ 9 [Dkt. # 92] ("We also estimate that the Access Fee Rules have caused [us] to decommission many of [our] terminals. . . . I believe that our volume[s] are artificially reduced because we must obey the Access Fee Rules."). If plaintiffs cannot show that the rules they want to enjoin are causing the harm they complain of, then they are not entitled to injunctive relief.

In addition, plaintiffs' extraordinary delay in requesting an injunction only reinforces my decision that plaintiffs have *not* established irreparable harm. The ATM Access Fee Rules were adopted in 1996. Plaintiffs filed suit fifteen years later, in 2011, but did not seek preliminary injunctive relief then. Only five years later (and four months after the Circuit Court remanded to the District Court) did plaintiffs then seek a "preliminary" injunction. This protracted delay undermines their argument that that they are subject to irreparable harm in the absence of a preliminary injunction. *See Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1976); *Guttenberg v. Emery*, 26 F.3d 88, 103 (D.D.C. 2014).

Finally, defendants move to strike a supplemental declaration from Mr. Michael R. Kohner, attached to the plaintiffs' reply brief for failure to comply with the Local Rules of this Court. *See* Mot. to Strike Ind. ATM Operator Plaintiffs' Supp. Decl. [Dkt. #102]Reply Declaration of Michael R. Kohner [Dkt. # 100-1]. I agree. The Local Civil Rules state that applications for preliminary injunctions should be supported by *all* the affidavits on which the movant intends to rely, and that supplemental affidavits "may be filed only with permission of the Court." LCvR 65.1(c). By filing the declaration with their reply, plaintiffs precluded the defendants from responding to Mr. Kohner's declaration in writing.

They did not seek permission before doing so, and I will grant the defendants' motion to strike Mr. Kohner's declaration and will not consider it. *John Doe Co. v. CFPB*, 17-cv-00049-RC, 2017 WL 663528, at *3 n.4 (D.D.C. Feb. 17, 2017); *Elk Assocs. Funding Corp. v. U.S. Small Bus. Admin.*, 858 F. Supp. 2d 1, 26 (D.D.C. 2012).

In the end, however, the presence or absence of Mr. Kohner's reply declaration would not have altered my analysis. Even though Mr. Kohner declares that plaintiff Mills-Tel Corp "absolutely could have stayed in business were it not for the networks' ATM Access Fee Rules," this conclusory statement fails to connect the ATM Access Fees to Mills-Tel financial performance and its decision to sell its assets, and is insufficient to show that the ATM Access Fee Rules caused the company to go out of business. *See, e.g., Nat'l Mining Assoc. v. Jackson*, 768 F. Supp. 2d 34, 50 (D.D.C. 2011) (holding that declaration stating that company would be out of business in eighteen months failed to meet the irreparable harm standard because the projection was too conclusory and failed to "offer a projection of anticipated future losses, tie that to an accounting of the company's . . . assets, or explain with any specificity" how he reached conclusion that he would be forced to close business).

## CONCLUSION

For the reasons stated above, plaintiffs' Application for a Preliminary Injunction [Dkt. # 60] is DENIED as moot, defendants' Motion to Strike Independent ATM Operator Plaintiffs' Supplemental Declaration [Dkt. #102] is GRANTED, and plaintiffs' Renewed Application for a Preliminary Injunction [Dkt. # 87] is DENIED. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge