**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FILED
MAY 2 4 2017
Clerk, U.S. District & Bankruptcy Courts for the District of Columbia

NATIONAL ATM COUNCIL, INC., *et al.*,
Plaintiffs,

v.

VISA INC., *et al.*,
Defendants.

No. 1:11-cv-01803-RJL

ANDREW MACKMIN, *et al.*,
Plaintiffs,

v.

VISA INC., *et al.*,
Defendants.

No. 1:11-cv-01831-RJL

MARY STOUMBOS,
Plaintiff,

v.

VISA INC., *et al.*,
Defendants.

No. 1:11-cv-01882-RJL

**STIPULATION AND ORDER REGARDING THE**
**PRODUCTION OF DISCOVERY MATERIAL**

**1. PURPOSES AND LIMITATIONS**

Discovery requests and subpoenas served in the Actions may call for the production of electronically stored information. Accordingly, the Parties hereby stipulate to and petition the Court to enter the following Stipulated Order Regarding the Production of Discovery Material ("Order").

**2. DEFINITIONS**

2.1 Actions: *National ATM Council, Inc., et al. v. Visa Inc., et al.*, No. 11-cv-1803 (RJL) (D.D.C.), *Mackmin, et al. v. Visa Inc., et al.*, No. 11-cv-1831 (RJL) (D.D.C.), and *Stoumbos v. Visa Inc., et al.*, No. 11-cv-1882 (RJL) (D.D.C.) and any and all cases consolidated or coordinated with any of those Actions.

2.2 Document: defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a)(1)(A).

2.3 Email: electronic messages sent or received asynchronously via messaging applications, including, but not limited to, Microsoft Outlook, Google Gmail, or Lotus Notes.

2.4 Instant Messages: real time communications sent via chat client or SMS, including but not limited to Bloomberg Chat, Google Talk, WhatsApp, Yahoo! Messenger, AOL Instant Messenger, Blackberry Messenger, ICQ, Pidgin, Adium, Trillian, or any proprietary instant messaging system. For the avoidance of doubt, this defined term includes messages sent within "chat rooms" or other online locations created for the purpose of facilitating Instant Messages between two or more individuals.

2.5 ESI: an abbreviation of "electronically stored information" and shall have the same meaning and scope as it has in Federal Rule of Civil Procedure 34(a)(1)(A).

2.6 Extracted Text: text extracted from a Native Format file using standard e-discovery processing tools, such as Law PreDiscovery or Nuix.

2.7 Load File: an electronic file that is used to import all required production information into a document database, including, if available, document images, Extracted Text or OCR text, Native Format files where required by this Order, and Metadata, as well as information indicating document breaks, and document relationships such as those between an Email or Instant Message and its attachments and a Document and information related to embedded content.

2.8 Metadata: structured information about ESI that is created by the file system or application, embedded in the Document or Email, and sometimes modified through ordinary business use. Metadata of the ESI describes, *inter alia*, the characteristics, origins, usage, and validity of the collected ESI.

2.9 Native Format: the format of ESI in the application in which such ESI was originally created.

2.10 OCR: the optical character recognition technology used to read paper Documents or electronic images of Documents and output such Documents to a searchable text format. The latter text is also referred to as the "OCR text" or simply "OCR."

2.11 Party: any party to any of the Actions, including all of its officers, directors, and employees.

2.12 Producing Party: any Party or third party that produces Documents in any of the Actions.

2.13 Receiving Party: a Party to whom Documents are produced in any of the Actions.

2.14 Responsive Document: any Document that is responsive to any discovery request or subpoena served on the Producing Party in the Action and which the Producing Party has agreed or been ordered to produce, subject to the limitations set forth in the Federal Rules of Civil Procedure or Court order.

2.15 Tagged Image File Format: or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper Documents.

## 3. SCOPE

The procedures and protocols set forth in this Order shall govern the production format of paper Documents and ESI in the Actions, to the extent available. This Order does not govern any procedures or criteria used to define or limit the scope of production such as identification and preservation of potentially responsive data types and systems, custodian selection, technology-assisted review processes, or the use of keyword search terms. Nothing in this Order establishes any agreement as to either the temporal or subject matter scope of discovery in any of the Actions. Nothing in this Order establishes any agreement as to any search protocol, including which sources shall be searched for Documents.

The production specifications in this Order apply to Documents that are produced in the first instance in any of the Actions. To the extent any Party is required or agrees to re-produce Documents in any of the Actions that originally were produced in other cases or government investigations, such Documents may be produced in the same format in which they originally were produced.

## 4. PRODUCTION FORMAT

4.1 Format Guidelines: The Parties shall, to the extent reasonably and technically possible, produce paper Documents and ESI according to the specifications provided in Exhibit A.

4.2 De-Duplication: A Party is only required to produce a single copy of a responsive Document family. Each Party may remove exact duplicate Document families (*i.e.*, identical copies of the same Document(s)), including but not limited to Email, to reduce the unnecessary cost of reviewing and producing exact duplicate Documents. If a Party chooses to remove exact duplicate Documents, the Party shall make reasonable efforts to remove exact duplicate ESI according to the MD5/SHA-1 hashing method and additional information regarding the family relationship and shall identify in the All Custodians field of each Document the name(s) of the custodians whose Documents the Producing Party agreed to produce who had duplicates of the Document removed during processing. Moreover, (a) if a Document is a duplicate of another Document but the Documents have different family members, they will not be de-duplicated,[1] although each family member shall be hashed separately for purposes of populating the "HashValue" field in Exhibit A; (b) responsive non-privileged attachments to Emails or other Documents shall not be disassociated from the parent Document even if they are exact duplicates of another Document in the production; and (c) paper Documents shall not be eliminated as duplicates of responsive ESI. ESI that is not an exact duplicate according to the MD5 or SHA-1 hashing method may not be removed. However, a Producing Party may use email threading to defensibly exclude, from both review and production,

[1] Unless otherwise agreed upon by the Parties, a family can only be removed through de-duplication if each and every member of the de-duplication candidate family has identical MD5/SHA-1 hashcodes to the corresponding members of another family. For example, if there is a two member family with a parent and an attachment, the MD5 hashcodes of the parent must be identical and the MD5 hashcodes of the attachments must also be identical.

duplicative content within the Producing Party's Documents. Both de-duplication and email threading will be performed with careful consideration of full Document families, and as such, neither process will suppress unique content found in an attachment. The Producing Party will produce separate inclusive emails where a thread splits into different conversation "branches."

4.3 Encrypted Documents: The Parties will make reasonable efforts to ensure that any responsive documents identified that are encrypted or password-protected Documents are successfully processed for review and production under the requirements of this Order, and if produced in Native Format, the decrypted Document is produced. To the extent responsive encrypted or password-protected Documents are successfully processed according to the requirements of this Order, the Parties have no duty to identify the prior encrypted status of such Documents. To the extent such responsive Documents are not successfully processed despite use of reasonable efforts, including reasonable technical efforts to obtain passwords, a placeholder TIFF image may be produced in place of each such Document indicating that security protection could not be removed. Upon request from the Receiving Party, the Parties shall meet and confer in good faith regarding reasonable efforts or mechanisms to remove such security protection or the production of available Metadata.

4.4 Documents to Be Produced Natively: Microsoft Excel and other spreadsheet files, including comma or tab delimited text files, Microsoft Access and other database files, video files, audio files, and animation files shall be produced in Native Format, if available. PowerPoint and other presentation files may be

produced either in Native Format or as color images in TIFF format. The Parties agree to meet and confer regarding the ability to produce other file types, including monthly reconciliation data and/or files regularly provided by ATM networks to ATM processors, in Native Format. If a Document to be produced in Native Format contains privileged information or information subject to any other applicable protection, the Document will be produced either in Native format with redactions or by producing the Document in TIFF format with redactions, to the extent reasonably and technically possible. To the extent Documents that fall under this paragraph contain privileged or protected information and cannot be redacted or produced in TIFF format, such Documents will be logged on a privilege log. The production load files shall contain a link to the produced Native Format files as specified in the "NativeLink" Metadata field described in Exhibit A. Each electronic file produced in Native Format shall be assigned a unique Document Number, as set forth in Section 4.11, and the database record for that file shall include a single page Bates-stamped TIFF image slip-sheet bearing the phrase "PRODUCED IN NATIVE FORMAT" (or similar language). To protect the confidentiality of files produced in Native Format, any confidentiality designations pursuant to the Stipulated Protective Order must appear on the associated TIFF placeholder. Files produced in Native Format shall be given file names that include the Bates Number and the file extension.

4.5 Embedded Files: Embedded files, defined as any Document contained in another Document, to responsive documents shall be produced as separate documents where reasonably feasible. Upon request by the Producing Party, the Parties shall

meet and confer in good faith regarding whether certain non-substantive embedded files may be excluded from production.

4.6 Technical Defect Files: For documents that have been identified as responsive or otherwise producible and that cannot be rendered to readable TIFF, a placeholder TIFF image may be produced in place of each such document indicating that the document could not be rendered to TIFF for technical reasons, or similar language. Upon request from the Receiving Party, the Parties shall meet and confer in good faith regarding reasonable efforts or mechanisms used to process the files.

4.7 Databases: To the extent a response to discovery involves production of electronic information stored in a database, the Producing Party will produce the information in a reasonably useable format and, where necessary, the parties should meet and confer regarding the appropriate format.

4.8 Production of Additional Documents in Native Format: Each Party reserves the right to request production of ESI in Native Format for any ESI that it believes is not adequately represented in the TIFF format specified in Exhibit A, and, upon a showing of reasonable need, such requests will not be unreasonably denied. If the Parties are unable to agree as to the production of the requested Documents in Native Format, the Parties may submit the matter to the Court.

4.9 Family Relationships: The parties agree that if any part of an Email or its attachments is responsive, the cover Email and attachments must be produced, except (i) any Documents that must be withheld or redacted on the basis of privilege, immunity, or privacy laws; and (ii) any nonresponsive attachments that:

contain trade secrets, proprietary information, non-public commercial, financial, strategic, personnel, or regulatory information; other commercially sensitive material; or confidential material that may be subject to third-party notice provisions. If nonresponsive attachments are withheld under (ii), the Producing Party must either provide a list of the Bates ranges for the Documents removed or produce a placeholder TIFF image in place of each such Document indicating that the Document is nonresponsive. The list of Bates ranges or placeholder TIFF images must indicate the following: the category of nonresponsive document (*e.g.*, trade secrets); the date of the Document, if this information can be extracted in an automated fashion via available metadata; the author(s) of the Document, if this information can be extracted in an automated fashion via available metadata; and the file name and title of the Document, if this information can be extracted in an automated fashion via available metadata, unless the Document is one that may be subject to third-party notice provisions and providing such information could implicate those provisions.

4.10 Unitization: In scanning paper Documents, each page of paper should be output to a single page TIFF file. Distinct, logical document breaks should be defined as such in a standard load file as described in Exhibit A. In the case of an organized compilation of separate Documents (*e.g.*, a binder containing several separate Documents behind numbered tabs), the Document behind each tab should be scanned separately, but any document or family relationship among the scanned Documents in the compilation should be reflected in the data load file at the appropriate standard fields. Pages containing post-it notes or other detachable

notes that obscure the underlying Document should be scanned once with the detachable note intact, and then again without it, and made part of the same Document. The Parties shall make reasonable efforts to unitize the Documents correctly. If providing OCR text presents an undue burden because the expense of providing OCR exceeds the benefit with respect to certain sets of Documents for which the process of providing OCR would likely be ineffective or produce unreliable results, the Producing Party is not obligated to provide OCR text, but the Producing Party will disclose that fact to the Receiving Party.

4.11 <u>Document Numbers and Confidentiality Designations for TIFF Images</u>: Each page of a Document produced in TIFF file format shall have a unique fixed-length numeric identifier ("Document Number") containing at least eight (8) digits. The Bates Number for each page of a Document shall be created so as to identify the Producing Party and the Document Number (*e.g.*, "Mackmin00000001"), and shall be electronically "burned" onto the image. Unless it would obscure, conceal, or interfere with any information originally appearing on the Document, the Bates Number shall be burned on the lower right hand corner of the Document. Unless it would obscure, conceal, or interfere with any information originally appearing on the Document, any confidentiality designation pursuant to the Stipulated Protective Order filed with the Court shall appear on the lower left hand side of each page of a produced Document.

4.12 <u>Metadata Fields and Processing</u>: Each of the Metadata and coding fields set forth in Exhibit A that can reasonably and technically be extracted from a Document shall be produced for that Document. The Parties are not obligated to populate

manually any of the fields in Exhibit A if such fields cannot be extracted from a Document using reasonable means and its context in the source data, with the exception of the following, if available: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Redacted, (g) Confidentiality, and (h) MD5 Hash or SHA-1 Hash. Metadata shall be provided in a Concordance-format delimited file with a .DAT file extension and standard delimiters for column break and text qualifier. The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each Document. Nothing herein shall require a Producing Party to create or produce Metadata that does not exist or is not reasonably or technically accessible.

4.13 Production Media: The Producing Party shall produce Document images, Native Format files, load files, and Metadata on hard drives, CDs, DVDs, USB thumb drives, secure FTP, or other mutually agreeable media ("Production Media"). Each piece of Production Media shall include a unique identifying label corresponding to the identity of the Producing Party, the date of the production of Documents on the Production Media, and the Bates Number ranges of the Documents in that production (*e.g.*, "Plfs' Production June 1, 2014, ATM00000123-ATM00000456"). To the extent that the Production Media includes any confidential information protected under any Stipulated Protective Order filed with the Court, the label on such Production Media shall indicate that the Production Media includes information so designated as required under the terms of the Stipulated Protective Order. Production Media shall also include text referencing the case name and number. Further, any replacement Production

Media shall clearly identify that it is a replacement and cross-reference the Bates Number range that is being replaced. All Production Media that is capable of write protection should be write-protected before production. All Production Media may be encrypted, with the Producing Party to provide a decryption key at the time of production. Productions should be accompanied by a cover letter identifying the Bates Numbers for Documents produced, listing the custodians whose files are present in the production, and briefly describing the source(s) of the other Documents present in the production, if any.

**5. PROCESSING SPECIFICATIONS**

5.1 The Producing Party will generate and preserve the MD5 or SHA-1 hash values of all ESI based on the Native Format file. The Producing Party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to its production: Where Documents are not otherwise produced natively, all TIFF images shall display tracked changes, comments, PowerPoint speaker notes, and other hidden text, regardless of the display setting for this information as last saved by the custodian, to the extent reasonably and technically possible. Each Producing Party shall make reasonable efforts to process all ESI with a single time zone and a date and time setting that is consistent across all of that Party's productions.

**6. CONFIDENTIALITY**

Documents shall be subject to the terms of the Stipulated Protective Order agreed upon by the parties, and entered by the Court, as well as Federal Rule of Civil Procedure 26(b)(5)(B).

## 7. LOG OF REDACTED OR WITHHELD DOCUMENTS

The Parties agree to exchange privilege logs for Documents redacted or withheld consistent with Federal Rule of Civil Procedure 26(b)(5). The parties agree to discuss the use of categorical privilege logs as appropriate for specific categories of documents. If a traditional privilege log is used, the party claiming the privilege shall state the following information separately for each Document withheld:

(a) the specific privilege, protection, or immunity claimed;

(b) the type of document (*e.g.*, "e-mail reflecting legal advice");

(c) the date of the Document, if this information can be extracted in an automated fashion via available metadata;

(d) the author(s) of the Document, if this information can be extracted in an automated fashion via available metadata;

(e) the sender(s), addressee(s), and/or recipient(s) of the Document, if this information can be extracted in an automated fashion via available metadata;

(f) the custodian(s) of the Document;

(g) the Bates number range of the Document and family, if applicable; and

(h) the general subject matter of the Document (i.e. "…legal advice regarding [topic].").

If a claim of privilege or other protection applies to only a portion of a Document, the Document need not be included on a privilege log, but should be produced with the portion claimed to be privileged obscured and stamped "redacted." In addition, the Producing Party shall indicate the basis for the redaction, either on the face of the Document or on a separate log providing the Bates number of the redacted Document and the applicable claim(s) of privilege or protection. The Parties shall meet and confer in good faith regarding any additional substantive and formatting requirements for privilege logs. Privileged communications with outside litigation counsel need not be logged.

**8. AMENDMENT OF ORDER**

Nothing herein shall preclude any Party from seeking to amend this Order in writing for good cause shown, provided, however, that no Party may seek relief from the Court concerning compliance with the Order until it has met and conferred in good faith with any Parties involved in the dispute.

**9. MISCELLANEOUS**

9.1 Right to Assert Other Objections: By stipulating to the entry of this Order, no Producing Party waives any right it otherwise might have to object to disclosing or producing any information or item on any ground, including confidentiality, attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Similarly, no Producing Party waives any right to object on any ground to the authenticity, admissibility, or use in evidence of any of the material covered by this Order.

9.2 Retention Obligations: Nothing in this Order alters a Party's legal obligation to retain Documents and data.

9.3 Exemplification Costs: The Parties agree not to consider, and therefore not to seek, the conversion of native files to TIFF files as exemplification costs under 28 U.S.C. § 1920(4).

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated: May 18, 2017

By: */s/ Jonathan L. Rubin*

Jonathan L. Rubin (D.C. Bar No. 353391)
MOGINRUBIN LLP
1615 M Street, NW, Third Floor
Washington, D.C. 20036
Tel: (202) 630-0616
Fax: (877) 247-8586
jrubin@moginrubin.com

Daniel J. Mogin (*pro hac vice*)
Jodie M. Williams (*pro hac vice*)
Jennifer Oliver (*pro hac vice*)
MOGINRUBIN LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Tel: (619) 687-6611
Fax: (619) 687-6610
dmogin@moginrubin.com
jwilliams@moginrubin.com
joliver@moginrubin.com

*Counsel for Plaintiffs the National ATM Council, Inc.; ATMs of the South, Inc.; Business Resource Group, Inc.; Cabe & Cato, Inc.; Just ATMs, Inc.; Wash Water Solutions, Inc.; ATM Bankcard Services, Inc.; Meiners Development Company of Lee's Summit, Missouri, LLC; Mills-Tel, Corp. d/b/a First American ATM; Selman Telecommunications Investment Group, LLC; Scot Garner d/b/a SJI; Turnkey ATM Solutions, LLC; Trinity Holdings Ltd, Inc.; and T&T Communications, Inc. and Randal N. Bro d/b/a T & B Investments*

Dated: May 18, 2017

By: /s/ Steve W. Berman
Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Jennifer Fountain Connolly
(D.C. Bar No. 1019148)
HAGENS BERMAN SOBOL SHAPIRO LLP
1701 Pennsylvania Ave. NW, Suite 300
Washington, D.C. 20006
Telephone: (202) 248-5403
jenniferc@hbsslaw.com

Stephen R. Neuwirth (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
stephenneuwirth@quinnemanuel.com

Adam B. Wolfson (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
adamwolfson@quinnemanuel.com

Lauren Weeman Misztal
(D.C. Bar No. 1015897)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
777 6th Street, NW, 11th Floor
Washington, D.C. 20001
Telephone: (202) 538-8000
laurenmisztal@quinnemanuel.com

Craig L. Briskin
(D.C. Bar No. 980841)
MEHRI & SKALET, PLLC
1250 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Cbriskin@findjustice.com

*Counsel for Interim Co-Lead Counsel for Direct Purchaser Consumer Plaintiffs*

Dated: May 18, 2017

By: /s/ *Douglas G. Thompson*
Douglas G. Thompson (D.C. Bar # 172387)
dthompson@finkelsteinthompson.com
Michael G. McLellan (D.C. Bar # 489217)
mmclellan@finkelsteinthompson.com
FINKELSTEIN THOMPSON LLP
James Place
1077 30th Street, N.W., Suite 150
Washington, D.C. 20007
Telephone: 202-337-8000

Facsimile: 202-337-8090

Christopher Lovell
clovell@lshllp.com
Gary S. Jacobson
gsjacobson@lshllp.com
Jody R. Krisiloff
jkrisiloff@lshllp.com
LOVELL STEWART HALEBIAN
JACOBSON LLP
61 Broadway, Suite 501
New York, NY 10006
Telephone: (212) 608-1900
Facsimile: (212) 719-4677

*Interim Class Counsel for the Independent ATM Consumers*

Dated: May 18, 2017

By: /s/ Mark R. Merley
Mark R. Merley (D.C. Bar No. 375866)
Matthew A. Eisenstein (D.C. Bar No. 476577)
ARNOLD & PORTER
KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
Tel.: (202) 942-5000
Fax: (202) 942-5999
mark.merley@apks.com
matt.eisenstein@apks.com

*Counsel for Defendants Visa Inc., Visa U.S.A. Inc., Visa International Service Association, and Plus System, Inc.*

Dated: May 18, 2017

By: /s/ Kenneth A. Gallo
Kenneth A. Gallo (D.C. Bar No. 371253)
Justin Anderson (D.C. Bar No. 1030572)
Michelle S. Kallen (D.C. Bar No. 1030497)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 223-7300
Fax: (202) 223-7420
kgallo@paulweiss.com

Gary R. Carney (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel.: (212) 373-3000
Fax: (212) 757-3990
gcarney@paulweiss.com

*Counsel for Defendants Mastercard Incorporated and Mastercard International Incorporated*

Dated: May 18, 2017

By: /s/ Mark P. Ladner
Michael B. Miller (D.C. Bar No. NY0140)
Mark P. Ladner (*pro hac vice*)
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY 10104-0050
Tel.: (212) 468-8000
Fax: (212) 468-7900
mladner@mofo.com
mbmiller@mofo.com

*Counsel for Defendants Bank of America, National Association; NB Holdings Corporation; and Bank of America Corporation*

Dated: May 18, 2017

By: /s/ Peter E. Greene
Peter E. Greene (D.C. Bar No. 305607)
Boris Bershteyn (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Times Square
New York, NY 10036
Tel.: (212) 735-3620
Fax: (917) 777-3620
peter.greene@skadden.com

*Counsel for Defendants Chase Bank USA, N.A.; JPMorgan Chase & Co.; and JPMorgan Chase Bank, N.A.*

Dated: May 18, 2017

By: /s/ William F. Cavanaugh, Jr.
William F. Cavanaugh, Jr. (*pro hac vice*)
Daniel S. Ruzumna (D.C. Bar No. 450040)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Tel.: (212) 336-2000
Fax: (212) 336-2222
wfcavanaugh@pwbt.com
druzumna@pbwt.com

*Counsel for Defendants Wells Fargo & Company and Wells Fargo Bank, N.A.*

**IT SO ORDERED.**

Dated: 5/21, 2017

Hon. Richard J. Leon
United States District Judge

## EXHIBIT A

### 1. PRODUCTION LOAD FILES

There will be two Load/Unitization files accompanying all productions of ESI.

- The first will be a Metadata import file, in Concordance-format delimited file with a .DAT file extension.
- The second will be a cross-reference file that contains the corresponding image information [IDX] identifying document breaks. The acceptable formats for the cross-reference files are .log and .opt.

### 2. IMAGES

- Produce Documents in Single Page Group IV TIFF.
- Image Resolution of at least 300 DPI.
- If any Party deems the quality of a Document produced in TIFF format to be insufficient, the Parties will meet and confer in good faith to determine whether the Producing Party must produce the Document as a JPEG file or as a color image in TIFF or PDF format.
- File Naming Convention: Match the Bates Number of the page. For files produced in Native Format, match the Bates Number of the associated TIFF image slip-sheet.
- Insert placeholder image for files produced in Native Format (see Paragraph 4.4), Technical Defect Files (see Paragraph 4.6), nonresponsive attachments (see Paragraph 4.9), or Documents withheld on the basis of privilege, work-product, other protection or immunity, or privacy laws as provided for herein. Parties may, for privileged Documents that are part of a family of responsive Documents, Bates number the Documents first and then remove the privileged family members rather than providing a placeholder image so that if the documents have to be later produced, they will be placed in the correct order in the production. If items are removed in this manner, the Bates numbers removed will be indicated on the privilege log. Parties may, for nonresponsive attachments that are part of a responsive family of Documents, Bates number the documents first and then remove the nonresponsive attachment rather than produce a placeholder image. If items are removed in this manner, the Producing Party will provide a list of Bates ranges for the documents removed.

### 3. SPECIAL FILE TYPE INSTRUCTIONS

- Certain file types shall be produced in Native Format, as specified in Paragraph 4.4.
- If redactions are required, see production requirements specified in Paragraph 4.4.

**4. FULL TEXT EXTRACTION/OCR**

- Where available, produce full extracted text for all file types (redacted text will not be produced). Redacted documents should be re-OCRed and the redacted text should be produced.
- Produce OCR text output for any paper document unless the party chooses to not OCR the documents because the cost to OCR the documents outweigh its utility. In that circumstance, the Producing Party will identify the documents it did not OCR and provide the documents as they were kept in the ordinary course of business.
- Produce OCR text output for any ESI where the source format was an image file (such as JPG, JPEG, GIF, BMP, PCX, PNG, TIF, TIFF, etc.) where extracted text cannot be provided, using industry standard OCR technology (redacted text will not be produced) unless the party chooses to not OCR the documents because the cost to OCR the documents outweigh its utility. In that circumstance, the producing party will identify the documents it did not OCR and provide the documents as they were kept in the ordinary course of business.
- Production format: Single text file for each Document, not one text file per page.
- File Naming Convention: Match Beginning Bates Number.

**5. ESI (AND PAPER TO THE EXTENT APPLICABLE) PRODUCTION METADATA FIELDS**

- BegBates: Beginning Bates Number (i.e. Bates Number associated with the first page of the Document).
- EndBates: Ending Bates Number (i.e. Bates Number associated with the last page of the Document).
- BegAttach: Beginning Bates Number of the first Document in a document family range. Documents that are part of document families, *i.e.*, containing parents and attachments, should receive a single value.
- EndAttach: Ending Bates Number of the last Document in a document family range. Documents that are part of document families, *i.e.*, containing parents and attachments, should receive a single value.
- Custodian: Name of the Custodian or repository of the Document produced.
- All Custodians: Names of all custodians from whom the Producing Party agreed to produce Documents who had a copy of the Document, if copies of the Document were removed through the de-duplication process. This field should include the Custodian. Multiple names should be separated by semicolons.
- RecordType: The record type of the Document (*e.g.*, email, attachment, e-file).
- FileName: File name of the original source ESI as stored by the custodian.
- NativeLink: The full path to produced Native Format file (see Paragraph 4.4.).
- EmailSubject: Subject line extracted from an Email message.
- Title: Title field extracted from the metadata of a non-Email Document.
- Author: Author field extracted from the metadata of a non-Email Document.
- From: From field extracted from an Email message. This should include the display name and email address of the sender to the extent both are available.

- To: To or Recipient field extracted from an Email message. This should include the display name and email address of the recipient(s) to the extent both are available. Multiple recipients should be separated by semicolons.
- CC: CC or Carbon Copy field extracted from an Email message. This should include the display name and email address of the CC recipient(s) to the extent both are available. Multiple CC recipients should be separated by semicolons.
- BCC: BCC or Blind Carbon Copy field extracted from an Email message. This should include the display name and email address of the BCC recipient(s) to the extent both are available. Multiple BCC recipients should be separated by semicolons.
- DateSent: Sent date and time of an Email message (mm/dd/yyyy hh:mm:ss format).
- MD5 Hash: MD5 hash value of the Document. The same Hash method (MD5 or SHA-1) should be used throughout production, and metadata should be provided for only one of the MD5 Hash or SHA-1 Hash fields.
- SHA-1 Hash: SHA-1 hash value of the Document. The same Hash method (MD5 or SHA-1) should be used throughout production, and metadata should be provided for only one of the MD5 Hash or SHA-1 Hash fields.
- File Extension: File extension of the Document (.msg, .doc, .xls, etc.)
- TextLink: The path to the full Extracted Text of the Document. If the Document does not have any extracted text, then OCR for the Document should be provided where appropriate, consistent with the terms of this Order.
- Confidentiality: "Confidential" or "Highly Confidential," if a document has been so designated under the Protective Order; otherwise, blank.
- Redacted: If the Document contains a redaction, this field will display "Yes." If the Document does not contain redactions, this field may display "No" or may be left blank or omitted.
- Attach Count: Number of attached files.
- Message-ID: The Outlook Message ID assigned by the Outlook mail server, if applicable.

**6. DE-DUPLICATION**

- De-duplication method: Parties may make reasonable efforts to de-duplicate stand-alone documents or entire document families globally using MD5 or SHA-1 Hash value matching.
- Common system files defined by the NIST library (http://www.nsrl.nist.gov/) need not be produced.