IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE NATIONAL ATM COUNCIL, INC., *et al.*

      *Plaintiffs*

v.                                                                         Civil Action No. 1:11-Cv-1803-RJL-MAU

VISA, INC., *et al.*

      *Defendants.*

_____/

**CLASS MEMBER CARDTRONICS USA INC.'S NOTICE OF FILING OBJECTION TO "UNOPPOSED MOTION OF THE ATM OPERATOR CLASS FOR AN ORDER DIRECTING CLASS NOTICE AND APPOINTING CLASS ADMINISTRATOR" (Dkt. 257)**

Cardtronics USA, Inc. ("Cardtronics"), as a member of the class certified in this class action (the "ATM Operator Class Action"), hereby gives notice of its objection ("Objection") to plaintiffs' "Unopposed Motion Of The ATM Operator Class For An Order Directing Class Notice And Appointing Class Administrator And Memorandum Of Points And Authorities In Support Thereof with Supporting Declarations," filed on July 24, 2025 (Dkt. 257) ("Unopposed Motion").

**I.   INTRODUCTION**

Cardtronics, the largest independent ATM Operator in the United States, intends to opt out of the ATM Operator Class Action and seek exclusion from the class, and it so notified the parties in June 2025. On July 24, 2025, plaintiffs filed the Unopposed Motion, which directly and negatively impacts Cardtronics' exercise of its right to be excluded from the class. (Dkt. 257.) Specifically, the Unopposed Motion asks this court to enter a "proposed order" delineating certain minimum information that a class member must provide for its request for exclusion from the class "to be valid." (Dkt. 257-7; "Proposed Order.")

1

Cardtronics discovered these filings through its regular monitoring of the class action. Despite being advised of Cardtronics' intent to opt out more than a month ago, plaintiffs sought no input from Cardtronics as to Proposed Order, including those requirements discussed below, and no copy of the notice was shared with Cardtronics as a courtesy or otherwise before or after filing. Accordingly, this notice of filing is necessary to apprise the Court of Cardtronics' concerns with, and objection to, the Proposed Order. Cardtronics files this Objection with a full reservation of its rights to opt out of the class.

The Proposed Order, if entered, would prejudice Cardtronics (and other class members desiring to opt out) by imposing unnecessary, unreasonable, and unduly burdensome conditions on the right of class members to request exclusion. As explained below, some of the required information goes well beyond the flexible "standard [that] is necessary to give effect to the Due Process right to opt out identified by the Supreme Court." *In re Linerboard Antitrust Litigation,* 223 F.R.D. 357 (E.D. Pa. 2004).

Cardtronics requests that the Court defer ruling on the Unopposed Motion until Cardtronics has conferred with Class Counsel and Defense Counsel about the need for and reasonableness of each of the proposed opt out requirements. If the parties are unable to resolve Cardtronics' Objection by agreement, Cardtronics requests that the Court afford it an opportunity to be heard on the matter

## II.   BASIS FOR CARDTRONICS' OBJECTION

### A. The Unopposed Motion and Proposed Requirements for Exclusion

On June 10, 2025, undersigned counsel met with Class Counsel by videoconference and confirmed that Cardtronics planned to exercise its right to opt out of the ATM Operator Class Action and file its own, independent action against the defendants for the conduct at issue in the Class Action. Contemporaneously, Cardtronics also notified Defendants of its intention to opt out.

2

On July 24, 2025, plaintiffs filed the Unopposed Motion (Dkt. 257), along with a Proposed Order (Dkt. 257- 7). Paragraph 8 of the Proposed Order addresses "[r]equests to be excluded from the class" and purports to set forth certain minimum information that a class member desiring to opt out must provide in order for its request to opt out "to be valid."

> ***To be valid, opt-out requests must be signed and include*** the Class Member's name and, if different, the name under which the Class Member operates ATMs, the Class Member's business location, the month and year that the Class Member began operating ATMs and, if applicable, the month and year it ceased such operations, ***and the following information for each terminal for which the Class Member requests exclusion: business name, location name (e.g., Express Shop, Country Market), street address, city, state, zip code, terminal ID, merchant ID number or card acceptor ID, and dates of operation.***

(Dkt 257-7; Proposed Order at ¶ 8.)

### B. Cardtronics' Membership in the Class and Scope of the Opt-out Claims.

The class certified in the ATM Operator Class Action is defined as follows:

> All **ATM Operators** that originated an **Authorized Surcharged ATM Cash Disbursement** at a **Qualified ATM** at any time between October 1, 2007 and the present (the "Class Period")

(Dkt. 197; Order at 1.) The certification order, by reference to the ATM Operator Plaintiffs' Corrected Motion for Class Certification filed September 19, 2019 (Dkt. # 154–1), defines the term "ATM Operator." (Dkt. 197; Order at 1.) Under that definition, Cardtronics is a member of the certified class by virtue of the fact that, during the entire Relevant Period, Cardtronics was (i) "an entity that owned, operated, or leased a Qualified ATM that was authorized by a Mastercard Member or Visa Member, or by the agent of such Member, to originate an ATM Cash Disbursement through the connection of the Qualifying ATM to the Visa or Mastercard ATM Networks," and (ii) an Independent Sales Organization "sponsored by a Mastercard Member or Visa Member and authorized to connect a Qualified ATM to the Mastercard or Visa ATM Networks….". (Dkt. 197; Order at 1) (incorporating Dkt. # 154–1 by reference).

3

Cardtronics acted as an "ATM Operator," as defined above, through two different business arrangements involving either ATM terminals owned by Cardtronics ("Company Owned") or ATM terminals owned by third parties ("Affiliate/Merchant Owned"). Under the Company-Owned arrangement, Cardtronics is the owner of the ATM terminal and itself provides all services required to operate the ATMs. Under the "Affiliate/Merchant-Owned" arrangement, Cardtronics does not own the ATM. Rather, the ATM is owned by a third party that lacks the necessary bank sponsorship arrangements to obtain access to ATM networks and, as a contractual affiliate of Cardtronics, relies on Cardtronics for network access and other services.

In the United States, the number of Cardtronics' Company-Owned ATMs deployed during the Relevant Period peaked at more than 45,000, and Cardtronics deployed tens of thousands of additional ATMs under arrangements with third-party owners. The table below lists approximate totals for each year of the Relevant Period:

| Year Ending | Company Owned | Affiliate/Merchant Owned |
|---|---|---|
| 2007 | 17,413 | 11,547 |
| 2008 | 16,630 | 11,711 |
| 2009 | 20,459 | 11,364 |
| 2010 | 24,594 | 11,329 |
| 2011 | 27,719 | 18,084 |
| 2012 | 31,573 | 26860 |
| 2013 | 34,064 | 30,489 |
| 2014 | 35,387 | 30,957 |
| 2015 | 44,049 | 46,166 |
| 2016 | 48,566 | 46,048 |
| 2017 | 44,070 | 45,766 |
| 2018 | 40,513 | 46,138 |
| 2019 | 40,792 | 47,854 |
| 2020 | 42,642 | 44,598 |
| 2021 | 42,719 | 47,866 |
| 2022 | 42,158 | 46,933 |
| 2023 | 42,123 | 46,802 |
| 2024 | 40,874 | 45,369 |

On a continuous basis and at all times during the Relevant Period, Cardtronics controlled the per-transaction dollar amount of the Access Fees (surcharges) paid by ATM cardholders, received Interchange payments from banks that issued ATM cards to consumers, and paid Acquirer Fees to the Defendants and other ATM networks for transactions in the United States on (i) all Company-Owned terminals, and (ii) some Affiliate/Merchant-Owned terminals (the "Included Affiliate/Merchant-Owned ATMs"). Cardtronics was and is an "ATM Operator" and a direct purchaser of ATM network services as to transactions on the Company-Owned ATMs and the Included Affiliate/Merchant-Owned ATMs.

Additionally, from 2011 through 2017, Cardtronics, as purchaser, acquired the equity and/or assets of numerous independent ATM Operators (the "Acquired IAOs") that deployed both company-owned and affiliate- or merchant-owned ATMs in the United States prior to the acquisition. The total number of company-owned ATMs acquired by Cardtronics from the Acquired IAOs was approximately 17,000. The number of affected ATM transactions on these terminals extends into the billions.

### C. The Proposed Order's requirement concerning "*information for each terminal for which the Class Member requests exclusion*" is unnecessary and impinges on Cardtronics' right to opt out

The Proposed Order's requirement that Cardtronics provide at the opt out stage "information for each terminal for which the Class Member requests exclusion" improperly affects Cardtronics' plain *right* to opt out of the class. At the opt out stage, courts have consistently recognized that only a "reasonable indication" of intent to opt out is sufficient. *In re Four Seasons Securities Laws Litigation*, 493 F.2d 1288 (10th Cir.1974); *see also Plummer v. Chemical Bank,* 668 F.2d 654, 657 n. 2 (2d Cir.1982) ("Any reasonable indication of a desire to get out should

suffice."). As explained in *In re Linerboard Antitrust Litigation,* 223 F.R.D. 357 (E.D. Pa. 2004), "[t]his standard is necessary to give effect to the Due Process right to opt out identified by the Supreme Court in *Phillips Petroleum v. Shutts,"* 472 U.S. 797, 812 (1985). *See also Council on Social Work Education, Inc. v. Texas Instruments,* 105 F.R.D. 68, 71 (N.D.Tex.1985) ("On several occasions, courts have passed on the issue of whether some particular action by an individual constituted an adequate request for exclusion ... The clear theme of these cases is that 'considerable flexibility' should be used in determining what constitutes an effective request for exclusion." (citing 2 Newberg, Class Actions § 2475r (1977)).

The Proposed Order's requirements far exceed this standard, essentially turning an opt out notice into a premature request for a proof of claim. Moreover, while the opt out from a *proposed settlement* may trigger a need for detailed information to protect defendants from possible duplicate recovery, no settlement has been proposed in the ATM Operator Class Action. The Proposed Order need only notify class members of their inclusion if the class and of their right to opt out of it.

> **D. Cardtronics should not be made to set forth its entire claims information in order to opt out.**

In anticipation of filing its independent action, Cardtronics has been working on gathering information concerning its damages and does not object to providing information that reasonably relates to its right to opt out. For example, Cardtronics is in the process of identifying the "Terminal ID" for each ATM terminal for which Cardtronics paid the Acquirer Fee during the Relevant Period, and to link that Terminal ID to the ATM owner's business name and address. Depending on deadlines, Cardtronics may not necessarily oppose the requirement that this information be provided (though other class members may well be prejudiced by this artificial threshold to the exercise of opt out rights).

However, other information set forth in the Proposed Order, such as "location name (*e.g.*, Express Shop, Country Market)" bears no conceivable relationship to Cardtronics' exercise of its right to opt out. For example, forcing a class member to state whether the terminal was located in an "Express Shop" or a "Country Market" seems like overkill even at the settlement stage, let alone for a notice of opt out. Additionally, assuming that the exact "dates of operation" for each terminal might be appropriate for a "proof of claim" after settlement of the class action, it would seem that a simple confirmation of operation of each terminal during the Relevant Period would suffice at the opt out stage. Nonetheless, Cardtronics is willing to discuss these items with Class Counsel and Defense Counsel to understand both the need for and scope of this "required" information.

Third, the request for "merchant ID number or card acceptor ID" for each terminal is most objectionable. Since the Unopposed Motion was filed just one business day ago and without advance notice to Cardtronics, Cardtronics has not yet begun to search for this information. However, a preliminary inquiry suggests that this information is not kept in Cardtronics' readily available core data base where, for example, it includes such information as affiliate names, addresses and Terminal IDs. Absent some compelling articulation of the need for this information at the opt out stage, the demand for this information is unreasonable and unduly burdensome, as it would require an extensive search of separate data bases, followed by labor-intensive efforts to link the requested identification numbers to Terminal IDs. Indeed, for some potential opt outs, the information may be more readily available from the Defendants than from Class Members. Thus, requiring this information would potentially require some class members to conduct discovery in aid of its opt-out request to satisfy the Proposed Order's definition of a "valid" opt out notice. See 7A Wright, Miller & Kane, Federal Practice and Procedure § 1787 (1972), p. 156 ("Rule 23(c)(2)

does not specify how the absentee is to request exclusion. It certainly would be an undue burden on class members to require them to retain counsel and prepare a formal legal document"). Moreover, it is not apparent to Cardtronics why the "merchant ID number or card acceptor ID" is needed in addition to the Terminal ID.

## CONCLUSION

For the foregoing reasons, Cardtronics requests that the Court defer ruling on the Unopposed Motion until such time as Cardtronics has had an opportunity to confer with Class Counsel and Defense counsel. If counsel are unable to resolve those objections by agreement, Cardtronics requests the opportunity to be heard on the matter.

Dated: July 28, 2025                                        Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

By: /s/ Richard Feinstein
Richard Feinstein
(DC Bar Number is 324848)
1401 New York Ave, NW
Washington, DC 20005
Phone: (202) 237-2727
Fax: (202) 237-6131
rfeinstein@bsfllp.com

Stuart H. Singer
(Fla. Bar No. 319333)
James Grippando
(Fla. Bar No. 383015)
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
ssinger@bsfllp.com
jgrippando@bsfllp.com